AUREA SILVA OLIVERAS y OTROS, demandantes y peticionarios, *v.* FELIPE DURÁN RODRÍGUEZ, demandado y recurrido.

*Número:* CE-87-334        *Resuelto:* 30 de junio de 1987

*S. L. Lagarde Garcés*, abogado de los peticionarios; *Francisco Cuyar Fernández* y *Moisés Abreu Cordero*, abogados del

recurrido; *José A. Figueroa Morales,* defensor judicial de Áurea Silva Oliveras.

EL JUEZ PRESIDENTE SEÑOR PONS NÚÑEZ emitió la opinión del Tribunal.

## I

El 1ro de mayo de 1987, los peticionarios, familiares de Myrta Silva Oliveras, presentaron un recurso de hábeas corpus en el Tribunal Superior, Sala de San Juan, contra el recurrido Felipe Durán Rodríguez y otros. Alegaron que Myrta Silva Oliveras padecía de sus facultades mentales, al grado de no poder discernir sobre su condición de vida y libertad, y que el demandado recurrido, aprovechándose de esta circunstancia, la mantenía ilegalmente bajo su custodia; además poseía y administraba ilegalmente sus bienes. Adujeron también que durante más de un año han tratado de localizar a Myrta Silva Oliveras a través del recurrido quien, proporcionándoles falsas informaciones, ha impedido que los peticionarios se comuniquen con ella. Solicitaron finalmente que se ordenara al recurrido que pusiera en libertad a Myrta Silva Oliveras y que se concediera la custodia temporal de ella a los peticionarios.

El mismo día que se incoó la petición de hábeas corpus los peticionarios también presentaron una acción *ex parte,* en la que solicitaban que se declarara judicialmente la incapacidad de Myrta Silva Oliveras y se nombrara tutora a su hermana, la copeticionaria Áurea Silva Oliveras.

El 4 de mayo de 1987 la parte peticionaria presentó una tercera acción, esta vez para impugnar un poder general otorgado por Myrta Silva Oliveras a favor del recurrido Felipe Durán Rodríguez. En la misma fecha, el tribunal ordenó la hospitalización de Myrta Silva Oliveras. Se dispuso que sólo podrían visitarla aquellas personas que ella específicamente solicitara.

En vista de que en las tres acciones judiciales incoadas por los peticionarios se cuestionaba la capacidad legal de Myrta Silva Oliveras y el derecho del recurrido a tenerla bajo su custodia y administrar sus bienes, el 7 de mayo de 1987 los peticionarios presentaron una moción sobre remedios provisionales bajo la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Solicitaron que se nombrara un administrador interino con el fin de evitar la dilapidación de sus bienes. El tribunal señaló vista para dilucidar la procedencia de los remedios provisionales. Advirtió que de no comparecer el demandado, "se concederán los remedios solicitados, en particular ... la designación de un Administrador Judicial Interino".

El 12 de mayo de 1987, en la continuación de la vista sobre hábeas corpus, la parte demandada-recurrida presentó, para la consideración del Tribunal, una sentencia emitida el 6 de mayo de 1987 por la Cámara de lo Civil y Comercial de la Primera Circunscripción del Juzgado de Primera Instancia del Distrito Nacional de la República Dominicana. En dicha sentencia se homologó[1] un acta notarial de 25 de noviembre de 1984 mediante la cual Myrta Silva Oliveras adoptó a Felipe Durán Rodríguez. En corte abierta el Tribunal Superior resolvió que, para otorgarle pleno reconocimiento y validez a la sentencia extranjera, el demandado debía iniciar un procedimiento de exequátur.

No obstante, el tribunal de instancia, motu proprio, reconsideró su determinación y concluyó que no tenía otra alternativa que autorizar al demandado a inscribir directamente en el Registro Demográfico la adopción efectuada en la República Dominicana, "sin trámite ulterior alguno". Fundamentó su determinación en lo dispuesto en el Art. 21C de la Ley del Registro Demográfico, según

---

[1] Procedimiento análogo al de protocolización. I. de Casso y Romero, *Diccionario de Derecho Privado*, Barcelona, Ed. Labor, 1954, T. II, pág. 2175.

enmendada, 24 L.P.R.A. sec. 1138. Dicho artículo dispone lo siguiente:

Cualquier adopción hecha fuera de Puerto Rico, de persona nacida en Puerto Rico, se inscribirá a solicitud de parte interesada, en el Registro Demográfico, previa presentación de copia autenticada de la resolución o decreto autorizando la adopción, siguiéndose el mismo procedimiento especificado en la sección anterior. Si de dicha resolución o decreto no constaren todas las circunstancias necesarias para la inscripción, la parte interesada deberá complementarla mediante declaración jurada que se unirá a los demás documentos.

El 19 de mayo de 1987 recurrió ante nos la parte peticionaria. El 20 de mayo ordenamos la paralización de los procedimientos en el tribunal de instancia y le concedimos término al recurrido para que mostrara causa por la cual no debiera:

(a) revocarse la resolución del 12 de mayo de 1987 [en la que se autoriza la inscripción de la adopción extranjera sin trámite ulterior alguno];

(b) ordenarse el nombramiento de un administrador judicial interino para los bienes de doña Myrta Silva Oliveras con poderes para que conjuntamente con el defensor judicial determine y resuelva, con el asesoramiento pericial pertinente, todo lo relativo a la custodia y cuidado de doña Myrta Blanca Silva Oliveras;

(c) ordenarse que los honorarios de dicho administrador judicial interino como los del defensor judicial sean justificados al Tribunal de instancia y pagados previa aprobación de éste con cargo a los bienes de dicha doña Myrta Blanca Silva Oliveras. Resolución del Tribunal Supremo de Puerto Rico de 20 de mayo de 1987.

Con la comparecencia de ambas partes, el caso quedó sometido el 17 de junio de 1987. Procedemos a resolver.

## II

■ En *Ef. Litográficos* v. *Nat. Paper & Type Co.*, 112 D.P.R. 389 (1982), reconocimos que el medio adecuado para otorgarle reconocimiento y validez a una sentencia extranjera es el procedimiento de exequátur. Adoptamos allí las normas generales a utilizarse para determinar si a una sentencia extranjera se le debe dar pleno reconocimiento y validez. Es necesario, entre otras consideraciones, que la sentencia extranjera haya sido dictada mediando el debido proceso de ley, que no haya sido obtenida mediante fraude y que no sea contraria al orden público del foro requerido. *Ef. Litográficos* v. *Nat. Paper & Type Co.*, supra, pág. 404; A. Boggiano, *Derecho Internacional Privado*, 2da ed., Buenos Aires, Ed. Depalma, 1983, T. II, págs. 1223–1337.

■ Se ha señalado que el fundamento para requerir que una sentencia extranjera tenga que ser sometida al procedimiento de exequátur, en derecho internacional, es el de la soberanía. "Fundamentalmente, ningún Estado reconoce las sentencias de otro con carácter general, por estos motivos; porque todos los actos de soberanía estatal pierden eficacia fuera de los límites territoriales, tan sólo si el titular de la soberanía reconoce la sentencia extranjera por virtud de esa su propia soberanía, podrá ser eficaz el acto soberano extranjero. Sin embargo, no es ésta la conducta que generalmente se sigue ni se puede seguir como norma, pues no es raro que se susciten dudas y hasta desconfianza contra la Justicia extranjera, sea porque descanse sobre una concepción social, económica, moral e ideológica distinta, sea porque esté corrompida o no se amolde al riguroso concepto que el Estado extranjero tenga acerca de lo que es una Justicia independiente. Estos defectos aparecen evidenciados a través del concepto de

'orden público', que domina por completo nuestra vida jurídica internacional." T. Süs, *El Reconocimiento de Sentencias Extranjeras*, Año VIII, Núm. 1, Rev. Der. Proc. 8-9 (1952).

■ En el caso de autos, el recurrido pretende presentar como defensa la sentencia dominicana de adopción, sin que ésta haya sido avalada por un tribunal de Puerto Rico. La parte demandante expresamente se opuso y solicitó que se le requiriera utilizar el procedimiento de exequátur. En este sentido le asiste razón a la parte demandante. Si la sentencia extranjera no ha sido ratificada por un tribunal puertorriqueño, ésta puede ser atacada o impugnada, pues no goza de las garantías que ofrece el procedimiento de exequátur.[2]

■ Ello no quiere decir que no se pueda inscribir en el Registro Demográfico una sentencia de adopción extranjera sin haber seguido el procedimiento de exequátur. El lenguaje del Art. 21C de la Ley del Registro Demográfico, *supra*, lo permite. Específicamente refiriéndose a una adopción realizada en país extranjero, dicho estatuto permite su inscripción mediante "copia autenticada de la resolución o decreto autorizando la adopción". Art. 21C, *supra*. Si faltare alguna circunstancia necesaria para la inscripción, ésta se puede suplir mediante declaración jurada.

---

[2] No obstante si se obtiene en Puerto Rico una sentencia de un tribunal para convalidar la sentencia de adopción extranjera, transcurridos dos años "la adopción no podrá ser atacada directa ni colateralmente en ningún procedimiento". Art. 613E de la Ley de Procedimientos Legales Especiales, 32 L.P.R.A. sec. 2697.

Aun si asumimos, para propósitos argumentativos, que el período de dos años que provee el Art. 613E, *supra*, se cuenta desde que se emitió la *sentencia extranjera*, en el caso de autos la adopción estaría sujeta a impugnación ya que la sentencia dominicana fue dictada el 6 de mayo de 1987.

■ Lo que sucede es que la inscripción así hecha de la adopción extranjera no acarrea que el Estado le haya otorgado su pleno reconocimiento y que la misma sea inatacable según provee el Art. 613E, *supra*; para que una sentencia extranjera reúna las garantías que la harían inatacable en Puerto Rico tendría que ser avalada por un tribunal de esta jurisdicción.

En resumen: (a) un decreto de adopción extranjera puede inscribirse directamente en el Registro Demográfico de Puerto Rico conforme lo permite el Art. 24C de la Ley del Registro Demográfico, *supra*; (b) mientras el decreto de adopción extranjera no sea ratificado por una sentencia válida de nuestra jurisdicción, la adopción está sujeta a impugnación por los medios provistos en ley y no goza de la protección que provee el Art. 613E de la Ley de Procedimientos Legales Especiales, *supra*.

A similar resultado se ha llegado en España, donde las sentencias extranjeras sobre el estado civil logran acceso al registro civil sin necesidad del procedimiento de exequátur. Sin embargo, su pleno reconocimiento se obtiene a través de los tribunales. A. Remiro Brotons, *Ejecución de sentencias extranjeras en España*, Madrid, Ed. Tecnos, 1974, págs. 161-166; A. Miaja de la Muela, *Derecho Internacional Privado*, 9na ed., Madrid, Ed. Atlas, 1982, T. II, págs. 388-389.

### III

Resta por considerar si, tal como habíamos intimado en nuestra orden de 20 de mayo de 1987, se debe ordenar el nombramiento de un administrador judicial interino para los bienes de Myrta Silva Oliveras.

En este caso el tribunal de instancia tuvo serias dudas sobre la capacidad mental de Myrta Silva Oliveras. Éste consideró el testimonio y un diagnóstico preliminar del Dr. Manuel A. Martínez en el que se concluye que Myrta

Silva Oliveras padece de arteriosclerosis cerebral, demencia orgánica y enfermedad de Alzheimer.(3) El recurrido no ha refutado directamente la alegación de que doña Myrta Silva Oliveras esté de hecho en estos momentos mentalmente incapacitada. Es con conocimiento de estas circunstancias que el 15 de mayo de 1987 el Tribunal designó al Lic. José Figueroa Morales como defensor judicial de Myrta Silva Oliveras.

■ En su escrito, el recurrido plantea que en el procedimiento sobre declaratoria de incapacidad no está previsto específicamente el nombramiento de un administrador judicial. Sin embargo, no explica por qué no se pueden solicitar remedios provisionales bajo la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en dichos casos.

■ La Regla 56.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III, específicamente provee como remedio provisional la administración judicial. Ésta, a tenor con dicha regla, se llevará a cabo de acuerdo con las normas que el Tribunal adopte y, supletoriamente, según las reglas para la administración de las sucesiones. Arts. 556–597 de la Ley de Procedimientos Legales Especiales, 32 L.P.R.A. secs. 2361–2571.

El recurrido argumenta también que no procede la administración judicial, pues existe un poder general otorgado a su favor por Myrta Silva Oliveras. No le asiste tampoco la razón al recurrido.

■ El recurrido indica en sus alegaciones que durante los últimos 18 años ha cuidado a Myrta Silva Oliveras y

---

(3) Enfermedad de Alzheimer: "Estado caracterizado clínicamente por síntomas de debilidad mental progresiva y anatómicamente por la presencia de placas de Redlich-Fisher en la corteza cerebral." *Diccionario Terminológico de Ciencias Médicas*, 8va ed., Barcelona, Ed. Salvat, 1963, pág. 400.

que hace 14 años vive con ella. Por ello podemos presumir que él conoce íntimamente la condición mental de la señora Silva, la cual se alega por los recurrentes es de incapacidad. De resultar correcta dicha alegación, y como hemos visto existe ya en los autos suficiente evidencia para creer que ello puede ser así, el mandato ha terminado, pues se reconoce que una de las causas de extinción del mandato es la incapacidad del mandante.

No cabe duda que el mandatario puede concluir sólo aquellos actos que el mandante jurídicamente puede efectuar por sí mismo. H. Mazeaud, *Leçons de Droit Civil*, 5ta ed., Paris, Ed. Montechrestien, 1980, T. III, Vol. 2, pág. 859. El Código Civil específicamente provee, como una de las causas de extinción del mandato, la "interdicción" del mandante. Art. 1623 del Código Civil, 31 L.P.R.A. sec. 4481. La doctrina española ha reconocido ampliamente que la "interdicción" a que se refiere este artículo debe interpretarse en el sentido de toda causa de incapacidad que inhabilite al mandante. F. Bonet Ramón, *Código Civil Comentado*, Madrid, Ed. Aguilar, 1962, pág. 1370; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. II, pág. 468; J. R. León Alonso, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Priv., 1986, T. XXI, Vol. 2, pág. 483; F. Sánchez Román, *Estudios de Derecho Civil*, Impresos de la Real Casa, Madrid, 1889, T. IV, pág. 494.

En este caso existe controversia legítima sobre la capacidad mental de Myrta Silva Oliveras y sobre la validez del poder general, en virtud del cual el recurrido administra sus bienes. Ambas partes litigantes reclaman el derecho a administrar los bienes, el recurrido en virtud del poder y la hermana mayor de ésta en virtud de las disposiciones sobre tutela legítima del Código Civil, 31 L.P.R.A. sec. 701.

En estas circunstancias la manera efectiva de proteger los bienes mientras se resuelve la controversia principal del pleito es nombrar un administrador judicial interino. Es precisamente para situaciones como la presente que se proveen remedios provisionales en nuestras reglas procesales.

Los honorarios y gastos incurridos por el administrador judicial interino serán con cargo a los bienes de Myrta Silva Oliveras. Véanse: Regla 56.6 de Procedimiento Civil, *supra*, 32 L.P.R.A. sec. 2491. Ya que el tribunal de instancia había dispuesto que los honorarios del defensor judicial serían satisfechos por el recurrido con cargo a los bienes de Myrta Silva Oliveras, al cambiar la administración al administrador judicial interino, éste los satisfará de igual forma. Tanto los honorarios como los gastos en que incurran el administrador judicial interino y el defensor judicial, se someterán al tribunal para su aprobación.

*Se dictará sentencia de conformidad con lo aquí resuelto.*

El Juez Asociado Señor Negrón García no intervino. El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita. El Juez Asociado Señor Ortiz se inhibió.