El Juez Asociado Señor Rivera García
emitió la opinión del
Tribunal.
Este recurso nos exige examinar si el Registro Demo-gráfico puede enmendar un certificado de nacimiento, fun-damentando su proceder en una sentencia dictada por un tribunal de un estado de Estados Unidos de América, sin esta haberse validado y reconocido por vía del procedi-miento de exequátur. Coetáneamente, debemos determi-nar si el Tribunal de Apelaciones erró al ordenar, motu proprio, que el Tribunal de Primera Instancia celebrara de inmediato un procedimiento de exequátur para la validez y el reconocimiento de la sentencia objeto de la controversia.
Esbozamos los antecedentes fácticos que dieron génesis al caso que nos ocupa.
I
El 11 de febrero de 2008, la Sra. Annette G. Rodríguez Contreras (señora Rodríguez Contreras o peticionaria), en representación de su hija, la menor T.R., presentó una de-manda ante el Tribunal de Primera Instancia contra el Es-tado Libre Asociado de Puerto Rico (E.L.A.), el Departa-mento de Salud y el Sr. Carlos Javier Correa Rodríguez (señor Correa Rodríguez).(1) En su interpelación, la peticio-naria argüyó que era la madre con custodia y patria potes-tad de la menor T.R., nacida el 10 de junio de 2000 pro-ducto de su relación sentimental con el señor Correa *510 Rodríguez. Según alegó la señora Rodríguez Contreras, luego del nacimiento de la menor, el 11 de julio de 2000, el señor Correa Rodríguez reconoció voluntariamente a la niña T.R. como su hija, por virtud de un certificado de pa-ternidad suscrito por este y sometido al Registro Demográ-fico de Puerto Rico (Registro).(2)
Además, alegó que luego de gestionar una copia del cer-tificado de nacimiento de su hija ante el Registro en el 2008, descubrió que la referida agencia había tachado el nombre del señor Correa Rodríguez como el padre de la menor T.R.(3) La peticionaria añadió que dicha tachadura se debió a una orden emitida por la Corte de Familia del Estado de Nueva York el 27 de abril de 2004.(4)
A raíz de ello, la señora Rodríguez Contreras suplicó al foro primario que emitiese un dictamen ordenando al Re-gistro a restablecer el certificado de nacimiento de la me-nor a su estado original, a saber, que se reinscribiese al señor Correa Rodríguez como el padre de la niña T.R.(5) Apoyó su petitorio en su entendimiento de que “[l]as sen-tencias dictadas en jurisdicciones estatales de los Estados Unidos[,] al igual que las extranjeras!,] no operan ex propio vigore, esto es, no son autoejecutables”.(6)
En contestación, el E.L.A., en representación del Depar-tamento de Salud, reconoció que el nombre del señor Co-rrea Rodríguez fue tachado del encasillado correspondiente al padre en el certificado de nacimiento de la menor T.R.(7) *511 Respecto al señor Correa Rodríguez, el Tribunal lo anotó en rebeldía el 12 de junio de 2008.(8) No obstante, esta fue levantada y dejada sin efecto por el Tribunal en virtud de una moción sometida por el señor Correa Rodríguez.(9)
Posteriormente, el 23 de mayo de 2008, la peticionaria presentó ante el Tribunal de Primera Instancia una solici-tud de sentencia sumaria.(10) En ella planteó que no exis-tían hechos esenciales o materiales en controversia y que, a la luz de la aceptación por parte del Registro de que habían tachado el nombre del señor Correa Rodríguez del certificado de nacimiento, correspondía que el foro prima-rio dictara sentencia a favor de la señora Rodríguez Contreras y la menor.(11) Así, requirió nuevamente que se reinscribiese el nombre del señor Correa Rodríguez en el certificado de la niña T.R.(12)
Así las cosas, el 1 de julio de 2008, el E.L.A. se opuso a la solicitud de sentencia sumaria de la peticionaria.(13) El Estado argüyó que la sentencia de la Corte de Familia del Estado de Nueva York había desestimado con peijuicio una petición de alimentos instada por la peticionaria, ya que determinadas pruebas genéticas inclinaron a ese tribunal a colegir que el señor Correa Rodríguez no era el padre de la menor.(14)
Además, el E.L.A. sostuvo que el referido dictamen im-puso al Registro la obligación, so pena de desacato, de eli-minar el nombre del señor Correa Rodríguez del certificado de nacimiento de T.R. para que este no figurase como el padre de la menor, acorde con la realidad biológica de su *512 filiación.(15) Descansando en la aludida orden judicial, el E.L.A. se opuso a la solicitud de la peticionaria, por enten-der que reinscribir el nombre del señor Correa Rodríguez en el certificado de nacimiento de la menor atentaba contra “el principio de veracidad filiatoria” establecido en Ma-yol v. Torres, 164 D.P.R. 517 (2005).(16)
Como fundamento para su oposición, el E.L.A. argüyó que, por décadas, la práctica del Registro ha sido conferirle entera fe y crédito, sin procedimientos ulteriores, a las sen-tencias u órdenes que provengan de los tribunales de los estados de Estados Unidos de América. Según el Gobierno, el procedimiento de exequátur solo era realizado en aque-llas instancias en que las sentencias u órdenes proviniesen de una jurisdicción distinta a cualquier estado de la Unión Americana.(17)
Atendida la solicitud de sentencia sumaria de la peticio-naria, al igual que la oposición del E.L.A., la primera fue declarada No Ha Lugar por el Tribunal de Primera Instan-cia el 29 de agosto de 2008.(18)
Insatisfecha con el dictamen, el 6 de octubre de 2008 la peticionaria acudió en alzada ante el Tribunal de Apelacio-nes mediante un recurso de certiorari.(19) Contando con la comparecencia de las partes, el 20 de febrero de 2009, el foro apelativo intermedio dictó su sentencia.(20) En esta, el Tribunal a quo resolvió que el Director del Registro no te-nía facultad legal para ordenar la alteración o modificación de las constancias del Registro por virtud de una orden judicial del Estado de Nueva York que nunca fue sometida *513 al procedimiento de exequátur, según requerido por nues-tro ordenamiento legal.(21) A esos efectos, dictaminó que el Tribunal de Primera Instancia debía celebrar un procedi-miento de exequátur de inmediato.
Inconforme con la orden emitida por el foro apelativo intermedio, el 26 de mayo de 2009 la peticionaria acudió ante nos mediante la presentación del auto de marras. En su recurso, la señora Rodríguez Contreras imputa al Tribunal a quo la comisión del error siguiente:
Erró el Tribunal de Apelaciones al no ordenar al Registro De-mográfico restablecer el certificado de nacimiento de la menor T.R. para que nuevamente aparezca Carlos Javier Correa Ro-dríguez como su padre, a pesar de haber determinado que el Registro Demográfico no podía acoger y ejecutar la orden emi-tida por un tribunal estadounidense y en su lugar ordenar la celebración de un procedimiento de exequátur. Petición de Cer-tiorari, pág. 7.
Considerado el recurso presentado por la peticionaria, el 13 de noviembre de 2009 expedimos el auto de certiorari. Contando con las comparecencias de ambas partes, pase-mos a delinear el recuadro jurídico aplicable a la controver-sia esbozada.
II
A. El procedimiento de exequátur
En el ámbito del derecho internacional privado, cada jurisdicción goza de una soberanía jurídica, la cual aconseja contra “la efectividad automática de sentencias y órdenes dictadas por los tribunales de un estado o país extranjero”.(22) Cónsono con ese principio, nuestro ordenamiento jurídico requiere que tales sentencias y órde- *514 nes sean reconocidas y validadas por nuestros tribunales locales por vía del procedimiento denominado exequátur.(23)
Como bien apuntalamos jurisprudencialmente en Ef Laográficos v. Nat. Paper & Type Co., 112 D.P.R. 389 (1982), una sentencia de un país extranjero será reconocida y convalidada si cumple con los criterios siguientes: “(1) Que la sentencia extranjera haya sido dictada por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma!;] (2) Que la sentencia haya sido dictada por un tribunal competente!;] (3) Que se haya observado el debido proceso de ley por el tribunal que emitió la sentencia!;] (4) Que el sistema bajo el cual se dictó la sentencia se distinga por su imparcialidad y ausencia de prejuicios contra los extranjeros!, y] (5) Que la sentencia dictada en el extranjero no sea contraria al orden público del foro requerido o local, que no sea contraria a los principios básicos de la justicia y que no haya sido obtenida mediante fraude.”(24)
Construyendo sobre lo enunciado, posteriormente en Roseberry v. Registrador, 114 D.P.R. 743 (1983), atendimos una vertiente distinta a aquella considerada en Ef. Lito-gráficos v. Nat. Paper & Type Co., supra, a saber: el proce-dimiento para la ejecución de una sentencia procedente de un estado norteamericano.(25) En la resolución del citado caso, tuvimos la oportunidad de examinar los efectos que tenía la cláusula sobre la entera fe y crédito de la Consti-tución de
*515 Estados Unidos,(26)así como la See. 2 de la Ley de Relacio-nes Federales, sobre el procedimiento de exequátur.(27)
Según nuestro dictamen, reconocimos que el referido proceso no era incompatible con la cláusula constitucional indicada.(28) En apoyo a esa conclusión expresamos:
La Sec. 1 del Art. IV de la Constitución [de Estados Unidos] no prescribe el procedimiento para dar entera fe y crédito a los actos públicos, documentos y procedimientos judiciales de otras jurisdicciones domésticas. Tal sección no exige que [determinado funcionario público] le dé directamente entera fe y crédito a una sentencia extranjera, haciendo caso omiso de las disposiciones de nuestras leyes que exigen la previa inter-vención de los tribunales. No opera ex propio vigore.
La razón para tal regla es clara. La cláusula de entera fe y crédito está sujeta a excepciones. Las sentencias emitidas en un estado no tienen derecho a entera fe y crédito en otro es-tado, por ejemplo, si la sentencia se dictó sin jurisdicción sobre alguna parte o materia. Es legítimo que un estado requiera que *516 las sentencias extranjeras no sean ejecutables a menos que sus tribunales lo ordenen, lo cual ofrece la necesaria oportunidad para que una parte interesada pueda interponer alguna de las defensas reconocidas a la aplicación de la cláusula de la entera fe y crédito. ... [E]s en los tribunales del estado ejecutante donde se han de presentar las sentencias y records del estado emitente para fines de impartirle entera fe y crédito. (Citas omitidas y énfasis nuestro.(29)
De acuerdo con lo anterior, en Toro Avilés v. P.R. Telephone Co., 177 D.P.R. 369, 376 (2009), pautamos que cuando el procedimiento de exequátur se origina por motivo de una sentencia de algún estado de la Unión Americana, el procedimiento es más sencillo. Ello, pues,
... contrario a los casos de sentencias de otros países, el reco-nocimiento en Puerto Rico de las sentencias de algún estado de los Estados Unidos está sujeto simplemente a las limitacio-nes de la cláusula de entera fe y crédito de la Constitución federal. En estos casos, los tribunales puertorriqueños sólo tie-nen que darle entera fe y crédito a dichas sentencias estatales, siempre y cuando éstas hayan sido dictadas por un tribunal con jurisdicción sobre la persona y la materia, mediante el debido proceso de ley y no hayan sido obtenidas por fraude. Así pues, el procedimiento de exequátur aplica sólo a situacio-nes relacionadas con sentencias dictadas por tribunales que no formen parte de la jurisdicción puertorriqueña y, a su vez, los requisitos varían dependiendo de si la sentencia que se pretende validar es de un país extranjero, o de un estado de Estados Unidos.(Escolios y énfasis omitidos.)(30)
Ahora bien, a pesar de la diferencia existente entre el procedimiento para la validez y el reconocimiento de las sentencias de otros países vis-á-vis aquellas que provienen de un estado de Estados Unidos de América, lo cierto es que “en Puerto Rico, al igual que en las demás jurisdicciones foráneas, las sentencias extranjeras, incluso las provenientes de las jurisdicciones estatales norteamericanas, no operan en forma directa o ex propio vigore, sino que *517 requieren el reconocimiento de los tribunales locales antes de que puedan ser ejecutadas o en alguna otra forma ha-cerse efectivas en [nuestra jurisdicción]”.(31)
Esta normativa es cardinal ya que persigue alcanzar determinados intereses trascendentales para nuestro orde-namiento jurídico, entre ellos,
... el deseo de evitar el derroche de recursos y la duplicación de esfuerzo que entraña la relitigación de un asunto; la preocu-pación por proteger a los litigantes victoriosos en otros foros de las tácticas evasivas y dilatorias de los litigantes vencidos; la importancia de evitar el parroquialismo y su influencia en la selección del foro por el demandante; el interés en promover la unidad y la estabilidad en el orden internacional jurídico; la condición en muchos casos del foro requirente como el más indicado para la decisión del asunto; el respeto debido a las nociones de orden público del foro requerido, así como a nocio-nes sobre la justicia prevalecientes en la comunidad internacional.(32)
Asimismo, hemos establecido que "el propósito de la acción de reconocimiento o de exequátur es garantizar el debido proceso de ley a las partes afectadas por la ejecutoria extranjera y concederles una oportunidad razonable para presentar sus defensas y ser escuchadas”.(33)
En Márquez Estrella, ex parte, supra, reiteramos nues-tros pronunciamientos jurisprudenciales referentes a la fi-gura del exequátur. Además, ante la ausencia de reglamen-tación —en aquellos momentos— que guiara a los tribunales en la celebración de la acción mencionada, pro-cedimos a adoptar ciertos requisitos que esquematizaran el procedimiento bajo examen. De esa manera, establecimos que para el reconocimiento y la convalidación de toda sen-tencia extranjera o proveniente de jurisdicciones estatales norteamericanas, debían observarse las reglas siguientes:
*518 1. El [procedimiento de exequátur] se iniciará mediante la presentación de una demanda en la sala correspondiente del Tribunal Superior de Puerto Rico en contra de todas las demás personas afectadas por dicha sentencia.
2. En lugar de dicha demanda se podrá admitir una solici-tud ex parte cuando comparecen en la misma todas las perso-nas afectadas por la sentencia cuyo reconocimiento y ejecución se pretenda. Dicha solicitud deberá ser suscrita bajo jura-mento por todos y cada uno de los comparecientes.
3. El procedimiento se tramitará en la forma ordinaria pro-vista por las Reglas de Procedimiento Civil de Puerto Rico.
4. La demanda o la solicitud ex parte que se presente deberá estar acompañada de una copia certificada de la sentencia cuya convalidación se solicita y de una traducción fiel y exacta de la misma al idioma español en caso de que no haya sido originalmente redactada en este idioma o en el idioma inglés. La copia certificada de la sentencia debe ser legible, estar com-pleta y deberá cumplir con los requisitos pertinentes estable-cidos en ... las Reglas de Evidencia de Puerto Rico ....
5. En todo caso en que, a los fines de lograr su posterior inscripción en el Registro de la Propiedad, se solicite la conva-lidación de las sentencias a las cuales se refiere el Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad [(30 L.P.R.A. sec. 2208)] deberá notificarse al Ministerio Fiscal.
6. En todo caso en que puedan ser afectados los intereses de menores o incapacitados, deberá incluirse en la demanda o en la solicitud ex parte que se presente a los padres y/o al tutor del menor o incapacitado, y se notificará de la misma al Pro-curador o Procuradora Especial de Relaciones de Familia para que dicho funcionario pueda defender los intereses del menor o incapacitado.
7. Cuando, a juicio del tribunal, se trate de un asunto de orden o interés público, se notificará con copia de la demanda o de la solicitud ex parte al Secretario de Justicia de Puerto Rico a los fines de que éste pueda comparecer en el procedi-miento en representación del Estado Libre Asociado.
8. Para la revisión de las resoluciones, sentencias u otras providencias del tribunal de instancia, se seguirán los proce-dimientos establecidos en las Reglas de Procedimiento Civil y en el Reglamento del Tribunal Supremo.
9. Una vez decretado el reconocimiento o convalidación de la sentencia extranjera, la fase de su ejecución se regirá por las disposiciones contenidas en nuestro ordenamiento procesal vi- *519 gente para la ejecución de nuestras sentencias. (Énfasis suprimido.)(34)
Por otra parte, referente al ámbito de revisión con el cual cuenta un Tribunal local a la hora de efectuar la acción bajo análisis, ya habíamos aseverado palmariamente que
... no es permisible en Puerto Rico la revisión en sus méritos de las sentencias extranjeras. La comisión por el tribunal ex-tranjero de errores de hecho o de derecho no tiene pertinencia al asunto de la ejecutabilidad de la sentencia en este foro. Las sentencias extranjeras podrán examinarse en su fondo como medio tan solo para precisar la existencia de factores limitati-vos del exequátur. Le negamos pertinencia a la comisión de errores de hecho o de derecho por considerar que la regla con-traria atenta contra el orden internacional y en realidad anula los objetivos centrales del juicio de exequátur.(35)
A esos efectos, el procedimiento de exequátur no dará cabida para que una de las partes relitigue en sus méritos la controversia que fue adjudicada por el tribunal extranjero.(36) Más bien, “[s]e admitirá prueba tan solo so-bre aquella parte de los méritos, si alguna, que sea nece-saria para esclarecer la aplicación de las normas [antes] sentadas respecto a la procedencia o no del exequátur”.(37) Primordialmente, el tribunal deberá enfocarse en “resolver los planteamientos de índole procesal que sean pertinentes [y] a determinar que la sentencia extranjera [o estatal] cumplió con todas las normas del Derecho Internacional Privado” antes discutidas.(38)
Ahora bien, lo anterior debe examinarse a la luz de nuestras expresiones en Márquez Estrella, ex parte, supra. *520 Allí distinguimos entre la validez de una sentencia y su reconocimiento. Según apuntalamos,
[l]a validez constituye ... un requisito para el reconocimiento. Pero el hecho de que una sentencia sea válida no conlleva necesariamente el reconocimiento de la misma, ya que ello implica la aceptación de las leyes del estado o país del foro de origen en cuanto a las personas y a la materia que quedará afectada por la ejecutoria. Por lo tanto, esta aceptación estará limitada por consideraciones de orden público, orden constitu-cional, los intereses, principios y valores del estado o país del foro donde se promueve el reconocimiento. No obstante, es ne-cesario advertir que en el caso de las sentencias dictadas en las jurisdicciones estatales de Estados Unidos, los tribunales [de Puerto Rico], al igual que los de los demás estados, territorios o posesiones federales, tendrán que darle entera fe y crédito a las mismas independientemente de lo que sean [sic] la política pú-blica y las disposiciones legales de Puerto Rico sobre la mate-ria o asunto de que se trate, siempre y cuando tales sentencias hayan sido dictadas por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma, mediante el debido proceso de ley y no hayan sido obtenidas por fraude. (Cita omitida y énfasis suplido.(39)
Todo lo anterior implica que en una acción de exequátur el tribunal local no podrá entrar a considerar los méritos de la sentencia extranjera, a no ser que se encuentre en la necesidad de constatar que la jurisdicción foránea ha cumplido con las normas de derecho internacional privado hasta aquí contempladas. Sin embargo, lo anterior no conlleva el reconocimiento automático de una sentencia ex-tranjera válida. Por el contrario, una sentencia extranjera no será reconocida cuando esta afecta adversamente determinadas consideraciones de orden público, orden constitucional, o los intereses, principios y valores del estado o país del foro donde se promueve el reconocimiento.
Además, si la sentencia proviene de un estado, territorio o posesión de la Unión Americana, entonces el tribunal local estará impedido de cuestionarla sustantivamente, a pe- *521 sar de que esta sea contraria a la política pública y a las disposiciones legales de Puerto Rico sobre la materia o asunto de que se trate, siempre y cuando aquel tribunal haya tenido jurisdicción sobre la persona y la materia que sea objeto de la sentencia, haya velado por el fiel cumpli-miento del debido proceso de ley y la sentencia no haya sido obtenida por fraude. Solo así se respeta la cláusula constitucional federal de entera fe y crédito.
Por último, amerita resaltar que hoy nuestras Reglas de Procedimiento Civil han recogido los preceptos jurispru-denciales discutidos. Mediante la reformulación del cuerpo procesal en el 2009, las Reglas 55 a 55.6 de Procedimiento Civil fueron adoptadas para incorporar normativamente, y por primera vez, aquellos aspectos procesales relacionados a la figura del exequátur.(40)
Así, la Regla 55.1 de Procedimiento Civil dis-pone que el término exequátur se ha de definir como un “procedimiento de convalidación y reconocimiento judicial de una sentencia de otra jurisdicción por los tribunales del foro donde se pretende hacer efectiva”.(41) Por su parte, la Regla 55.2 reconoce los dos métodos disponibles para ins-tar una acción de exequátur, a saber: (1) la presentación ante el tribunal correspondiente de una demanda contenciosa contra las otras partes afectadas por la sentencia ex-tranjera, o (2) una solicitud ex parte suscrita bajo juramento por las mismas personas que deben ser involucradas en un pleito contencioso.(42)
Por otro lado, la Regla 55.3 requiere que la copia certi-ficada de la sentencia extranjera sea legible, completa y que cumpla con las Reglas de Evidencia.(43) Además, exige que esté adecuadamente traducida al español de no haber *522 sido redactada originalmente en inglés o español.(44) Igual-mente, la Regla 55.4 requiere la notificación oportuna del procedimiento a las personas afectadas por la sentencia que se pretende convalidar y reconocer, al igual que a los funcionarios públicos a quienes se les debía notificar, se-gún lo pautado en Márquez Estrella, ex parte, supra.(45)
A su vez, la Regla 55.5 adopta la distinción en procedimientos cuando se pretende convalidar y reconocer una sentencia de una jurisdicción extranjera vis-á-vis una proveniente de algún estado de la Unión Americana.(46) Por último, nuestra Regla 55.6 de Procedimiento Civil exige que “[l]a ejecución de la sentencia de otra jurisdicción reconocida y convalidada se tramit[e] en conformidad con las disposiciones del ordenamiento procesal vigente para la ejecución de las sentencias dictadas por los tribunales de Puerto Rico”.(47)
*523 Examinadas las normas legales aplicables a la figura del exequátur, pasemos a esbozar el procedimiento reque-rido para la enmienda y alteración de un certificado de nacimiento.
B. Las enmiendas a los certificados de nacimiento
El Art. 31 de la Ley Núm. 24 de 22 de abril de 1931 (24 L.P.R.A. sec. 1231), según enmendada, conocida como Ley del Registro Demográfico de Puerto Rico, detalla el procedimiento cuando se interesa corregir o añadir cualquier dato a los certificados custodiados por el Secretario de Salud.(48) El referido precepto establece que
... las omisiones o incorrecciones que aparezcan en cualquier certificado antes de ser registrado en el Departamento de Sa-lud podrán ser salvadas insertando las correcciones o adicio-nes necesarias en tinta roja en dicho certificado, pero luego de haber sido archivado en el Departamento de Salud, no podrá hacerse en los mismos rectificación, adición ni enmienda al-guna que altere sustancialmente el mismo, sino en virtud de orden del Tribunal de [Primera Instancia], cuya orden, en tal caso, será archivada en el Departamento de Salud haciendo re-ferencia al certificado que corresponda .... (Énfasis nuestro.(49)
Como bien se deduce del citado texto, existen dos etapas en las cuales puede enmendarse un certificado de naci-miento, a saber: (1) previo al registro del certificado y (2) posterior a su archivo en el Departamento de Salud. En el primero de los casos, el Secretario del Departamento de Salud (Secretario) posee la facultad para corregir o añadir información sin la intervención de los tribunales. Empero, la segunda eventualidad sí requiere que los tribunales in-tervengan y autoricen cualquier actuación del Secretario o su personal.
Ante la enmienda de un certificado posterior a su ar-chivo en el Departamento de Salud, el Art. 31 de la Ley *524 Núm. 24, supra, provee el procedimiento judicial aplicable de la manera siguiente:
Para obtener dicha orden deberá presentar el interesado una solicitud a la Sala del Tribunal de [Primera Instancia] de su domicilio, exponiendo bajo juramento su pretensión y for-mulándola debidamente acompañada de la prueba documen-tal pertinente en apoyo de su solicitud. Copia de la solicitud y de toda la prueba documental le será remitida al Ministerio Fiscal simultáneamente con su radicación quien deberá for-mular su posición dentro del término de diez (10) días.
Transcurridos diez (10) días desde la remisión y notificación al Ministerio Fiscal sin que éste haya formulado objeción al-guna, el tribunal entenderá y resolverá los méritos de la peti-ción sin necesidad de celebrar vista, o discrecionalmente podrá celebrar vista de estimarlo procedente y dictará el auto que proceda.
... La rectificación, adición o enmienda de un certificado ya archivado en el Registro General Demográfico se hará inser-tando en él las correcciones, adiciones o enmiendas autoriza-das por el tribunal. ,Las tachaduras que fueren necesarias se harán de modo que siempre se pueda leer la palabra tachada. (Énfasis nuestro.(50)
En vista de lo anterior, resulta forzoso concluir que, si la enmienda solicitada al certificado de nacimiento encuentra su justificación o procedencia en una sentencia extranjera o en el dictamen de algún estado de la Unión Americana, será imprescindible que este haya sido validado y reconocido previamente vía un procedimiento de exequátur. Solo así armonizamos las doctrinas legales que imperan en nuestra jurisdicción.
Examinado el marco conceptual y jurídico aplicable a la controversia presentada, pasemos a su disposición adecuada.
III
En el caso de autos, la peticionaria le imputa al Tribunal a quo haber errado al no ordenar al Registro Demográ- *525 fico a que restableciera el certificado de nacimiento de la menor T.R. a su estado original mediante la reinscripción del señor Correa Rodríguez como el padre de la menor. Ello, a pesar del foro apelativo intermedio haber determi-nado que el Registro no podía acoger y ejecutar automáti-camente la sentencia emitida por el tribunal estatal de Nueva York, la cual resolvió que el señor Correa Rodríguez no era el padre biológico de la niña T.R.
Además, la señora Rodríguez Contreras arguye que el Tribunal de Apelaciones no tenía autoridad para ordenar al Tribunal de Primera Instancia que celebrara un proce-dimiento de exequátur, cuando ninguna de las partes ha solicitado tal remedio. Luego de examinar el expediente judicial en su integridad, es forzoso concluir que el foro judicial apelado incidió en el error imputado. Veamos.
Como bien indicamos en nuestra exposición del derecho, cuando una parte pretende enmendar el contenido de un certificado de nacimiento para rectificar alguna incorrec-ción u omisión, esta deberá adherirse al procedimiento dis-puesto en el Art. 31 de la Ley Núm. 24, supra. Cónsono con el estatuto mencionado, existen dos instancias en las cua-les podrá alterarse el contenido de un certificado, a saber: (1) previo a su archivo o (2) posterior a su registro.
Si la enmienda solicitada pretende alterar un certifi-cado ya archivado en el Departamento de Salud, será im-perativo que, antes de efectuarse la enmienda solicitada, los tribunales intervengan y autoricen la modificación pedida. A esos efectos, bajo ninguna circunstancia podrá el Secretario ordenar que un certificado ya archivado sea en-mendado sin la autorización de nuestros tribunales.
Para dar inicio a la referida intervención judicial, será imprescindible que la parte interesada presente una solici-tud ante el Tribunal de Primera Instancia, debidamente juramentada, fundamentada y acompañada de toda la prueba pertinente y admisible. Concomitantemente, la parte interesada deberá remitir una copia de la solicitud y *526 de toda su prueba documental al Ministerio Fiscal, quien tendrá 10 días para formular su posición respecto al peti-torio instado. Una vez el Ministerio Público manifieste su posición, o pasados diez días sin que la haya formulado, el Tribunal de Primera Instancia deberá resolver la solicitud en sus méritos y dictar el auto que proceda sin necesidad de celebrar vista, o celebrándola discrecionalmente de es-timarlo procedente.
Ahora bien, cuando la solicitud de enmienda al certifi-cado registrado se fundamenta en una sentencia extran-jera o de algún estado de Estados Unidos, el Tribunal de Primera Instancia no podrá considerar dicha solicitud en sus méritos, a no ser que la sentencia extranjera o norte-americana haya sido convalidada y reconocida anterior-mente mediante un procedimiento de exequátur celebrado en nuestros tribunales locales. Para ello, el procedimiento de exequátur podrá celebrarse como una acción que ante-cede la consideración de la solicitud de enmienda al certifi-cado archivado en el Departamento de Salud, o como un procedimiento concomitante a la solución de dicha petición.
Independientemente del método seleccionado, resulta imperativo que la enmienda solicitada no sea aprobada sin antes validarse y reconocerse la sentencia extranjera o es-tadounidense que la fundamenta. Ello, pues “en Puerto Rico, al igual que en las demás jurisdicciones foráneas, las sentencias extranjeras, incluso las provenientes de las ju-risdicciones estatales norteamericanas, no operan en forma directa o ex propio vigore, sino que requieren el re-conocimiento de los tribunales locales antes de que puedan ser ejecutadas o en alguna otra forma hacerse efectivas en [nuestra jurisdicción]”.(51) Enmendar un certificado regis-trado en el Departamento de Salud sin haber efectuado un procedimiento de exequátur, trastoca principios básicos del derecho internacional privado y las garantías constitucio- *527 nales a un debido proceso de ley, entre otros intereses públicos.
En el caso ante nos, el Registro alteró el certificado de nacimiento, previamente archivado, de la menor T.R. sin existir una solicitud judicial a esos efectos y sin contar con la intervención judicial requerida por el Art. 38 de la Ley Núm. 24 (24 L.P.R.A. sec. 1237). Fundamentó su proceder en una sentencia emitida por la Corte de Familia del Estado de Nueva York, la cual, basada en pruebas científicas y ge-néticas, resolvió que el señor Correa Rodríguez no era el padre biológico de la menor T.R. y, consecuentemente, or-denó al Registro a que enmendara el certificado de naci-miento de la menor conforme con esa realidad filiatoria. Tal proceder a todas luces, constituye un acto ultra vires que trasciende la autoridad legal conferida a esa agencia.
Cabe apuntalar que, aunque esa sentencia por virtud de la Constitución federal merece nuestra entera fe y crédito, esta no opera ex proprio vigore en nuestra jurisdicción. En virtud de nuestro ordenamiento jurídico, y apoyándonos en principios de debido proceso de ley, aquella parte intere-sada en que una sentencia emitida por un estado norte-americano cobre efectos en nuestra jurisdicción, está obli-gada a iniciar un procedimiento de exequátur mediante la presentación de una demanda en contra de todas las par-tes afectadas por el dictamen extranjero, o instando una solicitud ex parte en la cual comparezcan todas las partes que podrían verse afectadas por la sentencia cuyo recono-cimiento y ejecución se pretende.
Puesto que la sentencia del estado de Nueva York no fue validada y reconocida por un tribunal local, el Registro no podía ejecutarla automáticamente, tachando así del certi-ficado de nacimiento de la menor T.R. el nombre del señor Correa Rodríguez bajo el encasillado destinado a identifi-car al padre de la niña. Mucho menos cuando ninguna de las partes ha presentado una solicitud al Tribunal de Pri-mera Instancia peticionando la enmienda efectuada.
*528 Apoyándonos en todo lo anterior y considerando que no existen hechos en controversias que impidan que se dicte sentencia sumaria, resolvemos que el Registro debe resta-blecer el nombre del señor Correa Rodríguez como el padre de la menor T.R. Ello pues el Registro actuó ilegalmente al tachar su nombre sin gozar de una solicitud de enmienda al certificado de nacimiento debidamente adjudicada por el Tribunal de Primera Instancia y por ejecutar automática-mente una sentencia del estado de Nueva York que nunca fue validada y reconocida por un tribunal local.
Finalmente, procede examinar si el Tribunal de Apela-ciones podía ordenar, motu proprio, un procedimiento de exequátur para validar y reconocer la sentencia bajo examen. Como bien dispone el Prof. José A. Cuevas Sega-rra, nuestro derecho es de naturaleza rogada.(52) Ante tal realidad, correspondía a las partes presentar una demanda o petición ex parte de exequátur que iniciara el procedi-miento de convalidación y reconocimiento de la sentencia de la Corte de Familia de Nueva York. Al examinar el le-gajo, no encontramos petitorio alguno destinado a originar una acción de exequátur.
En el caso particular de la madre de la menor, esta sólo se limitó a solicitar que se revirtiese el contenido del certi-ficado de nacimiento de la niña T.R. a aquel que existía antes de la acción ultra vires del Registro, entiéndase, que se reinscriba al señor Correa Rodríguez como el padre de la menor.(53) Referente al Gobierno de Puerto Rico, en su ale-gato este reconoce que el Registro Demográfico carecía de *529 facultad para ejecutar de manera automática la orden de un tribunal del estado de Nueva York. Al así razonar, ex-pone que la acción del Registro Demográfico constituyó un error administrativo, el cual debe ser rectificado, ya que no le corresponde al Estado reclamar ni hacer efectiva esa orden por ser un asunto que le compete a los padres de la menor, específicamente al señor Correa Rodríguez. En ese contexto, la Procuradora General nos expresa lo siguiente:
Así pues, a la luz de la doctrina pautada por este Honorable Tribunal Supremo en cuanto al curso de acción adecuado ante la comisión de errores administrativos, y por consideraciones de política pública, hoy reconocemos que procede la rectifica-ción del error cometido por el Registro Demográfico y estamos en la mejor disposición de restablecer las constancias origina-les del mismo, con brevedad, de sernos ello ordenado por este Alto Foro. (Enfasis nuestro.) Alegato del Estado Libre Aso-ciado de Puerto Rico de 20 de abril de 2010, págs. 17-18.
Por último, el señor Correa Rodríguez, parte realmente interesada en que se rectifique el estado filiatorio de la menor, se ha cruzado de brazos a lo largo de este proceso. Según se deduce de todo lo anterior, en ningún momento alguna de las partes ha solicitado que se inicie una acción de exequátur.
En ese contexto, es improcedente que los tribunales ac-tuemos como abogados de alguna de las partes, ordenando, motu proprio, procedimientos judiciales que nunca fueron solicitados. Si alguna de las partes en el presente caso in-teresa que se ejecute en nuestra jurisdicción la sentencia del estado de Nueva York, es a esa parte y no al Tribunal de Apelaciones, a quien le corresponde instar una acción de exequátur de acuerdo con los preceptos legales discutidos en esta sentencia. En consecuencia, resolvemos que el foro apelativo intermedio erró al ordenar al Tribunal de Pri-mera Instancia que celebrara de inmediato un procedi-miento de exequátur para validar y reconocer la sentencia dictada por la Corte de Nueva York.
*530 IV
Por los fundamentos que anteceden, modificamos en parte la sentencia del Tribunal de Apelaciones. Como resul-tado, le ordenamos al Registro Demográfico de Puerto Rico a que reinscriba en el certificado de nacimiento de la niña T.R. al Sr. Carlos Javier Correa Rodríguez como padre de la menor y revocamos la orden emitida por el foro apelativo intermedio que dictaminaba la celebración de un procedi-miento exequátur de inmediato. Así modificada, confirma-mos el dictamen del Tribunal a quo.

Se dicta sentencia de conformidad.

 Petición de certiorari, Apéndice, págs. 14-15.

 íd., pág. 14. Según consta del expediente de autos mediante un certificado emitido por el Registro Demográfico de Puerto Rico (Registro) el 11 de mayo de 2004, para esa fecha el Sr. Carlos Javier Correa estaba inscrito como el padre de la menor T.R. Véase Petición de certiorari, Apéndice, pág. 17.

 Petición de certiorari, Apéndice, pág. 15. El expediente del caso de marras contiene un segundo Certificado de Nacimiento expedido por el Registro el 11 de enero de 2006. Id., pág. 18. En este observamos que no aparece entrada alguna que indique quién es el padre de la menor. íd., pág. 52.

 íd., pág. 15. Para examinar la Sentencia de la Corte de Familia del Estado de Nueva York (Caso Núm. U-24547), íd., págs. 53-59.

 íd., pág. 15.

 íd.

 Petición de certiorari, Apéndice, págs. 29-30.

 íd., pág. 44.

 íd., págs. 64-69.

 íd., págs. 40-43.

 íd.

 íd., pág. 41.

 Petición de certiorari, Apéndice, págs. 45-50.

 íd., pág. 45.

 íd., págs. 46 y 48.

 Como fundamento adicional, el E.L.A. argumentó que el Registrador, al tachar el nombre del señor Correa Rodríguez del certificado de nacimiento en con-troversia, actuó según la autoridad y discreción que le fue conferida por la Ley del Registro y su Reglamento. íd., págs. 49-50.

 íd., pág. 50.

 Petición de certiorari, Apéndice, pág. 69. Esta orden no fue fundamentada.

 íd., págs. 94 — 116.

 La misma fue notificada a las partes el 26 de febrero de 2009.

 Petición de certiorari, Apéndice, pág. 102.

 Mench v. Manguál, 161 D.P.R. 851, 856 (2004); Márquez Estrella, Ex parte, 128 D.P.R. 243, 247 (1991).

 íd. Véase, también, Toro Aviles v. P.R. Telephone Co., 177 D.P.R. 369, 375 (2009).

 Márquez Estrella, ex parte, supra, pág. 250. Véanse, también: Toro Avilés v. P.R. Telephone Co., supra, págs. 375-376; Mench v. Mangual, supra, págs. 856-857; Silva Oliveras v. Durán Rodríguez, 119 D.P.R. 254, 259 (1987).

 Roseberry v. Registrador, 114 D.P.R. 743, 744 (1983).

 El Art. IV, Sec. 1 de la Constitución de Estados Unidos provee lo siguiente:
“Se dará entera fe y crédito en cada estado a los actos públicos, documentos y procedimientos judiciales de los otros estados. El Congreso podrá prescribir me-diante leyes generales la manera de probar tales actos, documentos y procedimientos así como los efectos que deban surtir”. (Según citado en Roseberry v. Registrador, supra, pág. 746.) Véase, también, 28 U.S.C.A. see. 1738, que provee lo siguiente:
“The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
“The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
“Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.”

 Roseberry v. Registrador, supra, págs. 744-745.

 Aclaramos que nuestro análisis en el referido caso iba dirigido a examinar las exigencias del Art. 45 de nuestra ley hipotecaria y el Art. 59.1 de su reglamento, los cuales requerían que la ejecución de toda sentencia extranjera (incluyendo las emitidas por los estados de la Unión Americana) fuese dispuesta por un Tribunal local con jurisdicción. Véase íd., págs. 745-746.

 íd., págs. 746-747.

 íd., pág. 376.

 Márquez Estrella, ex parte, supra, pág. 255.

 Ef. Litográficos u. Nat. Paper & Type Co., supra, págs. 395-396.

 Mench o. Mangual, supra, pág. 856. Véase, también, Toro Avilés v. P.R. Telephone Co., supra.

 Márquez Estrella, ex parte, supra, págs. 253-254.

 Ef. Laográficos v. Nat. Paper & Type Co., supra, pág. 401. Véanse, también: Mench v. Mangual, supra, pág. 856; Márquez Estrella, ex parte, supra, pág. 255.

 Ef. Laográficos v. Nat. Paper & Type Co., supra, pág. 405.

 íd.

 Márquez Estrella, ex parte, supra, pág. 255.

 íd., págs. 255-256.

 32 L.P.R.A. Ap. V, R. 55.1-55.6.

 32 L.P.R.A. Ap. V, R. 55.1.

 32 L.P.R.A. Ap. V, R. 55.2.

 32 L.P.R.A. Ap. V, R. 55.3(a).

 32 L.P.R.A. Ap. V, R. 55.3(b).

 32 L.P.R.A. Ap. V, R. 55.4.

 Concretamente, la Regla 55.5 provee lo siguiente:
“El procedimiento se tramitará en la forma dispuesta en estas reglas.
El tribunal, luego de resolver los planteamientos de índole procesal que sean pertinentes, determinará si la sentencia de otra jurisdicción cumple con las normas siguientes:
(a) Si se trata de una sentencia de un estado de Estados Unidos de América o sus territorios:
(1) Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;
(2) que el tribunal que la emitió haya observado el debido proceso de ley, y
(3) que no haya sido obtenida mediante fraude.
(b) Si se trata de una sentencia dictada en otra jurisdicción que no sea un estado de Estados Unidos o sus territorios:
(1) Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;
(2) que se haya dictado por un tribunal competente;
(3) que el tribunal que la emitió haya observado los principios básicos del debido proceso de ley;
(4) que el sistema bajo el cual fue dictada se distinga por su imparcialidad y por la ausencia de prejuicio contra las personas extranjeras;
(5) que no sea contraria al orden público;
(6) que no sea contraria a los principios básicos de justicia, y
(7) que no se haya obtenido mediante fraude.” 32 L.RR.A. Ap. V.

 32 L.P.R.A. Ap. V, R. 55.6.

 24 L.P.R.A. sec. 1231.

 íd.

 íd.

 Márquez Estrella, Ex parte, supra, pág. 255.

 J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pub. JTS, 2011, T. IV, pág. 1256.

 Aunque la madre de la menor alegó que el Registro no podía enmendar el certificado de nacimiento de la niña según el contenido de una sentencia del estado de Nueva York que no había sido validada y reconocida, este argumento fue plan-teado como fundamento de su causa de acción principal, a saber: la naturaleza ultra vires de la efectividad automática de la sentencia estadounidense concedida por el Registro cuando enmendó el certificado de nacimiento. Interpretar que la peticiona-ria ha solicitado que se celebre un procedimiento de exequátur constituye añadir una segunda causa de acción a la demanda de la señora Rodríguez Contreras, la cual nunca fue instada por esta.