

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Annette G. Rodríguez Contreras En representación de su hija (T.R.) <br><br>     Peticionaria <br><br>        v. <br><br> Estado Libre Asociado de Puerto Rico; El Registro Demográfico de Puerto Rico <br><br>     Recurrida | Certiorari <br><br> 2011 TSPR 176 <br><br> 183 DPR ____ |

Número del Caso:   CC-2009-413

Fecha: 30 de noviembre de 2011

Tribunal de Apelaciones:

              Región Judicial de Carolina, Panel Especial

Jueza Ponente:       Hon. Migdalia Fraticelli Torres

Abogado de la Parte Peticionaria:

              Lcdo. José M. Fuster Lavin

Oficina de la Procuradora General:

              Lcda. Amir Cristina Nieves Villegas
              Procuradora General Auxiliar

Materia: Impugnación de Reconocimiento Voluntario

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Annette G. Rodríguez Contreras en representación de su hija (T.R.) Peticionaria | Certiorari |
| v. | CC-2009-0413 |
| Estado Libre Asociado de Puerto Rico; El Registro Demográfico de Puerto Rico Recurrida | |

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García.

En San Juan, Puerto Rico, a 30 de noviembre de 2011.

Este recurso nos exige examinar si el Registro Demográfico puede enmendar un certificado de nacimiento, fundamentando su proceder en una sentencia dictada por una corte de un estado de los Estados Unidos de América, sin ésta haberse validado y reconocido por vía del procedimiento de *exequátur*. Coetáneamente, debemos determinar si el Tribunal de Apelaciones erró al ordenar, *motu proprio*, que el Tribunal de Primera Instancia celebrara de inmediato un procedimiento de *exequátur* para la validez y el reconocimiento de la sentencia objeto de la controversia.

Esbozamos los antecedentes fácticos que dieron génesis al caso que nos ocupa.

I

El 11 de febrero de 2008, la Sra. Annette G. Rodríguez Contreras (señora Rodríguez Contreras o peticionaria), en representación de su hija, la menor T.R., presentó una demanda ante el Tribunal de Primera Instancia en contra del Estado Libre Asociado de Puerto Rico (E.L.A.), el Departamento de Salud y el Sr. Carlos Javier Correa Rodríguez (señor Correa Rodríguez).[1] En su interpelación, la peticionaria arguyó que era la madre con custodia y patria potestad de la menor T.R., nacida el 10 de junio de 2000 producto de su relación sentimental con el señor Correa Rodríguez. Según alegó la señora Rodríguez Contreras, luego del nacimiento de la menor, el 11 de julio de 2000, el señor Correa Rodríguez reconoció voluntariamente a la niña T.R. como su hija, por virtud de un certificado de paternidad suscrito por este y sometido al Registro Demográfico de Puerto Rico (Registro).[2]

Además, alegó que luego de gestionar una copia del certificado de nacimiento de su hija ante el Registro en el 2008, descubrió que la referida agencia había tachado el nombre del señor Correa Rodríguez como el padre de la

---

[1] Petición de Certiorari, Apéndice, págs. 14-15.

[2] Íd., pág. 14. Según consta del expediente de autos mediante un certificado emitido por el Registro Demográfico de Puerto Rico (Registro) el 11 de mayo de 2004, para esa fecha el Sr. Carlos Javier Correa estaba inscrito como el padre de la menor T.R. Véase, Petición de certiorari, Apéndice, pág. 17.

menor T.R.[3]  La peticionaria añadió que dicha tachadura se debió a una orden emitida por la Corte de Familia del Estado de Nueva York el 27 de abril de 2004.[4]

A raíz de ello, la señora Rodríguez Contreras suplicó al foro primario que emitiese un dictamen ordenando al Registro a restablecer el certificado de nacimiento de la menor a su estado original, a saber, que se reinscribiese al señor Correa Rodríguez como el padre de la niña T.R.[5] Apoyó su petitorio en su entendimiento de que "[l]as sentencias dictadas en jurisdicciones estatales de los Estados Unidos[,] al igual que las extranjeras[,] no operan *ex propio vigore*, esto es, no son auto ejecutables".[6]

En contestación, el E.L.A., en representación del Departamento de Salud, reconoció que el nombre del señor Correa Rodríguez fue tachado del encasillado correspondiente al padre en el certificado de nacimiento de la menor T.R.[7]  Respecto al señor Correa Rodríguez, el Tribunal lo anotó en rebeldía el 12 de junio de 2008.[8]  No

---

[3] Petición de *certiorari*, Apéndice, pág. 15. El expediente del caso de marras contiene un segundo Certificado de Nacimiento expedido por el Registro el 11 de enero de 2006.  Íd., pág. 18.  En éste observamos que no aparece entrada alguna que indique quién es el padre de la menor.  Íd., pág. 52.

[4] Íd., pág. 15.  Para examinar la Sentencia de la Corte de Familia del Estado de Nueva York (Caso Núm. U-24547), Íd., págs. 53-59.

[5] Íd.

[6] Íd.

[7] Petición de *certiorari*, Apéndice, págs. 29-30.

[8] Íd., pág. 44.

obstante, ésta fue levantada y dejada sin efecto por el Tribunal en virtud de una moción sometida por éste último.[9]

Posteriormente, el 23 de mayo de 2008, la peticionaria presentó ante el Tribunal de Primera Instancia una solicitud de sentencia sumaria.[10] En ella planteó que no existían hechos esenciales o materiales en controversia y que, a la luz de la aceptación por parte del Registro de que habían tachado el nombre del señor Correa Rodríguez del certificado de nacimiento, correspondía que el foro primario dictara sentencia a favor de la señora Rodríguez Contreras y la menor.[11] Así, requirió nuevamente que se reinscribiese el nombre del señor Correa Rodríguez en el certificado de la niña T.R.[12]

Así las cosas, el 1 de julio de 2008, el E.L.A. se opuso a la solicitud de sentencia sumaria de la peticionaria.[13] El Estado arguyó que la sentencia de la Corte de Familia del Estado de Nueva York había desestimado con perjuicio una petición de alimentos instada por la peticionaria, ya que determinadas pruebas genéticas inclinaron a ese tribunal a colegir que el señor Correa Rodríguez no era el padre de la menor.[14]

---

[9] Íd., págs. 64-69.

[10] Íd., págs. 40-43.

[11] Íd.

[12] Íd., pág. 41.

[13] Petición de *certiorari*, Apéndice, págs. 45-50.
[14] Íd., pág. 45.

Además, el E.L.A. sostuvo que el referido dictamen le impuso al Registro la obligación, so pena de desacato, de eliminar el nombre del señor Correa Rodríguez del certificado de nacimiento de T.R. para que éste no figurase como el padre de la menor, acorde con la realidad biológica de su filiación.[15] Descansando en la aludida orden judicial, el E.L.A. se opuso a la solicitud de la peticionaria, por entender que reinscribir el nombre del señor Correa Rodríguez en el certificado de nacimiento de la menor atentaba contra "el principio de veracidad filiatoria" establecido en Mayol v. Torres, 164 D.P.R. 517 (2005).[16]

Como fundamento para su oposición, el E.L.A. arguyó que, por décadas, la práctica del Registro ha sido conferirle entera fe y crédito, sin procedimientos ulteriores, a las sentencias u órdenes que provengan de los tribunales de los estados de los Estados Unidos de América. Según el Gobierno, el procedimiento de *exequátur* sólo era realizado en aquellas instancias en que las sentencias u órdenes proviniesen de una jurisdicción distinta a cualquier estado de la Unión Americana.[17]

---

[15] Íd., págs. 46 y 48.

[16] Como fundamento adicional, el E.L.A. argumentó que el Registrador, al tachar el nombre del señor Correa Rodríguez del certificado de nacimiento en controversia, actuó según la autoridad y discreción que le fue conferida por la Ley del Registro y su Reglamento. Íd., págs. 49-50.

[17] Íd., pág. 50.

Atendida la solicitud de sentencia sumaria de la peticionaria, al igual que la oposición del E.L.A., la primera fue declarada *No Ha Lugar* por el Tribunal de Primera Instancia el 29 de agosto de 2008.[18]

Insatisfecha con el dictamen, el 6 de octubre de 2008, la peticionaria acudió en alzada ante el Tribunal de Apelaciones mediante un recurso de *certiorari*.[19] Contando con la comparecencia de las partes, el 20 de febrero de 2009, el foro apelativo intermedio dictó su sentencia.[20] En esta, el Tribunal *a quo* resolvió que el Director del Registro no tenía facultad legal para ordenar la alteración o modificación de las constancias del Registro por virtud de una orden judicial del Estado de Nueva York que nunca fue sometida al procedimiento de *exequátur*, según requerido por nuestro ordenamiento legal.[21] A esos efectos, dictaminó que el Tribunal de Primera Instancia debía celebrar un procedimiento de *exequátur* de inmediato.

Inconforme con la orden emitida por el foro apelativo intermedio, el 26 de mayo de 2009, la peticionaria acudió ante nos mediante la presentación del auto de marras. En su recurso, la señora Rodríguez Contreras le imputa al Tribunal *a quo* la comisión del siguiente error:

> Erró el Tribunal de Apelaciones al no ordenar al Registro Demográfico a restablecer el

---

[18] Petición de *certiorari*, Apéndice, pág. 69. Esta orden no fue fundamentada.

[19] Íd., págs. 94-116.

[20] La misma fue notificada a las partes el 26 de febrero de 2009.

[21] Petición de *certiorari*, Apéndice, pág. 102.

certificado de nacimiento de la menor T.T. [sic] para que nuevamente aparezca Carlos Javier Correa Rodríguez como su padre, a pesar de haber determinado que el Registro Demográfico no podía acoger y ejecutar la orden emitida por un tribunal estadounidense y en su lugar ordenar la celebración de un procedimiento de exequátur.

Considerado el recurso presentado por la peticionaria, el 13 de noviembre de 2009 expedimos el auto de *certiorari*. Contando con las comparecencias de ambas partes, pasemos a delinear el recuadro jurídico aplicable a la controversia esbozada.

## II

*A. El procedimiento de Exequátur*

En el ámbito del Derecho Internacional Privado, cada jurisdicción goza de una soberanía jurídica la cual aconseja en contra de "la efectividad automática de sentencias y órdenes dictadas por los tribunales de un estado o país extranjero".[22] Cónsono con ese principio, nuestro ordenamiento jurídico requiere que tales sentencias y órdenes sean reconocidas y validadas por nuestros tribunales locales por vía del procedimiento denominado *exequátur*.[23]

Como bien apuntalamos jurisprudencialmente en Ef. Litográficos v. Nat. Paper & Type Co.,[24] una *sentencia de un país extranjero* será reconocida y convalidada si cumple

---

[22] Mench Fleck v. Mangual González, 161 D.P.R. 851, 856 (2004); Márquez Estrella, ex parte, 128 D.P.R. 243, 247 (1991).

[23] Íd. Véase, también, Toro Avilés v. P.R.T.C., 177 D.P.R. 369, 375 (2009).

[24] 112 D.P.R. 389 (1982).

con los criterios siguientes: (1) que la sentencia extranjera haya sido dictada por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma; (2) que la sentencia haya sido dictada por un tribunal competente; (3) que se haya observado el debido proceso de ley por el tribunal que emitió la sentencia; (4) que el sistema bajo el cual se dictó la sentencia se distinga por su imparcialidad y ausencia de prejuicios contra los extranjeros; y (5) que la sentencia dictada en el extranjero no sea contraria al orden público del foro requerido o local, que no sea contraria a los principios básicos de la justicia y que no haya sido obtenida mediante fraude.[25]

Construyendo sobre lo enunciado, posteriormente en Roseberry v. Registrador,[26] atendimos una vertiente distinta a aquella considerada en Ef. Litográficos v. Nat. Paper & Type Co., supra, a saber: el procedimiento para la ejecución de una sentencia procedente de un estado norteamericano.[27] En la resolución del citado caso, tuvimos la oportunidad de examinar los efectos que tenía la cláusula sobre la entera fe y crédito de la

---

[25] Márquez Estrella, ex parte, supra, pág. 250; Véanse, también: Toro Avilés v. P.R.T.C., supra, págs. 5-6; Mench Fleck v. Mangual González, supra, págs. 856-857; Silva Oliveras v. Durán, 119 D.P.R. 254, 259 (1987).

[26] 114 D.P.R. 743 (1983).

[27] Íd., pág. 744.

Constitución de Estados Unidos,[28] así como la Sec. 2 de la

Ley de Relaciones Federales, sobre el procedimiento de

*exequátur*.[29]

Según nuestro dictamen, reconocimos que el referido

proceso no era incompatible con la cláusula constitucional

indicada.[30]   En apoyo a esa conclusión expresamos:

> La Sec. 1 del Art. IV de la Constitución [de
> Estados Unidos] no prescribe el procedimiento
> para dar entera fe y crédito a los actos
> públicos, documentos y procedimientos judiciales
> de otras jurisdicciones domésticas.  Tal sección
> no exige que [determinado funcionario público]
> le dé directamente entera fe y crédito a una

---

[28] El Art. IV, Sec. 1 de la Constitución de Estados Unidos, provee lo siguiente:
> "Se dará entera fe y crédito en cada estado a los actos
> públicos, documentos y procedimientos judiciales de los
> otros estados. El Congreso podrá prescribir mediante leyes
> generales la manera de probar tales actos, documentos y
> procedimientos así como los efectos que deban surtir".
> (Según citado en Roseberry v. Registrador, supra, pág.
> 746).

Véase, también, 28 U.S.C. Sec. 1738, que provee lo siguiente:
> "The Acts of the legislature of any State, Territory, or
> Possession of the United States, or copies thereof, shall
> be authenticated by affixing the seal of such State,
> Territory or Possession thereto.
>
> "The records and judicial proceedings of any court of any
> such State, Territory or Possession, or copies thereof,
> shall be proved or admitted in other courts within the
> United States and its Territories and Possessions by the
> attestation of the clerk and seal of the court annexed, if
> a seal exists, together with a certificate of a judge of
> the court that the said attestation is in proper form.
>
> "Such Acts, records and judicial proceedings or copies
> thereof, so authenticated, shall have the same full faith
> and credit in every court within the United States and its
> Territories and Possessions as they have by law or usage
> in the courts of such State, Territory or Possession from
> which they are taken".

[29] Roseberry v. Registrador, supra, págs. 744-745.

[30] Aclaramos que nuestro análisis en el referido caso iba dirigido a examinar las exigencias del Art. 45 de nuestra Ley Hipotecaria y el Art. 59.1 de su Reglamento, los cuales requerían que la ejecución de toda sentencia extranjera (incluyendo las emitidas por los estados de la Unión Americana) fuese dispuesta por un Tribunal local con jurisdicción.  Véase, Íd., págs. 745-746.

sentencia extranjera, haciendo caso omiso de las disposiciones de nuestras leyes que exigen la previa intervención de los tribunales. No opera ex propio vigore. La razón para tal regla es clara. La cláusula de entera fe y crédito está sujeta a excepciones. Las sentencias emitidas en un estado no tienen derecho a entera fe y crédito en otro estado, por ejemplo, si la sentencia se dictó sin jurisdicción sobre alguna parte o materia. *Es legítimo que un estado requiera que las sentencias extranjeras no sean ejecutables a menos que sus tribunales lo ordenen, lo cual ofrece la necesaria oportunidad para que una parte interesada pueda interponer alguna de las defensas reconocidas a la aplicación de la cláusula de la entera fe y crédito.... [E]s en los tribunales del estado ejecutante donde se han de presentar las sentencias y records del estado emitente para fines de impartirle entera fe y crédito.*[31]

A la luz de lo anterior, en Toro Avilés v. P.R.T.C., supra, pautamos que cuando el procedimiento de *exequátur* se origina por motivo de una sentencia de algún estado de la Unión Americana, el procedimiento es más sencillo.[32] Ello, pues,

contrario a los casos de sentencias de otros países, el reconocimiento en Puerto Rico de las sentencias de algún estado de los Estados Unidos está sujeto simplemente a las limitaciones de la cláusula de entera fe y crédito de la Constitución federal. En estos casos, los tribunales puertorriqueños sólo tienen que darle entera fe y crédito a dichas sentencias estatales, siempre y cuando éstas hayan sido dictadas por un tribunal con jurisdicción sobre la persona y la materia, mediante el debido proceso de ley y no hayan sido obtenidas por fraude. Así pues, el procedimiento de *exequátur* aplica sólo a situaciones relacionadas con sentencias dictadas por tribunales que no formen parte de la jurisdicción puertorriqueña y, a su vez, los requisitos varían dependiendo si la

---

[31] (Énfasis nuestro.) (Citaciones internas omitidas.) Íd., págs. 746-747.

[32] Véase, también, Toro Avilés v. P.R.T.C., supra, pág. 376.

sentencia que se pretende validar es de un país extranjero, o de un estado de los Estados Unidos.[33]

Ahora bien, a pesar de la diferencia existente entre el procedimiento para la validez y el reconocimiento de las sentencias de otros países *vis a vis* aquellas que provienen de un estado de los Estados Unidos de América, lo cierto es que "en Puerto Rico, al igual que en las demás jurisdicciones foráneas, las sentencias extranjeras, incluso las provenientes de las jurisdicciones estatales norteamericanas, no operan en forma directa o *ex propio vigore*, sino que requieren el reconocimiento de los tribunales locales antes de que puedan ser ejecutadas o en alguna otra forma hacerse efectivas en [nuestra jurisdicción]".[34]

Esta normativa es cardinal, ya que la misma persigue alcanzar determinados intereses trascendentales para nuestro ordenamiento jurídico, entre ellos:

> el deseo de evitar el derroche de recursos y la duplicación de esfuerzo que entraña la relitigación de un asunto; la preocupación por proteger a los litigantes victoriosos en otros foros de las tácticas evasivas y dilatorias de los litigantes vencidos; la importancia de evitar el parroquialismo y su influencia en la selección del foro por el demandante; el interés en promover la unidad y la estabilidad en el orden internacional jurídico; la condición en muchos casos del foro requirente como el más indicado para la decisión del asunto; el respeto debido a las nociones de orden público del foro

---

[33] Íd., págs. 6-7.

[34] Márquez Estrella, ex parte, supra, pág. 255.

requerido, así como a nociones sobre la justicia prevalecientes en la comunidad internacional.[35]

Asimismo, hemos establecido que "el propósito de la acción de reconocimiento o de exequátur es garantizar el debido proceso de ley a las partes afectadas por la ejecutoria extranjera y concederles una oportunidad razonable para presentar sus defensas y ser escuchadas".[36]

En Márquez Estrella, *ex parte*, supra, reiteramos nuestros pronunciamientos jurisprudenciales referentes a la figura del *exequátur*. Además, ante la ausencia de reglamentación -en aquellos momentos- que guiara a los tribunales en la celebración de la acción mencionada, procedimos a adoptar ciertos requisitos que esquematizaran el procedimiento bajo examen. De esa manera, establecimos que para el reconocimiento y la convalidación de toda sentencia extranjera o proveniente de jurisdicciones estatales norteamericanas, debían observarse las siguientes reglas:

> 1. El [procedimiento de *exequátur*] se iniciará mediante la presentación de una demanda en la sala correspondiente del Tribunal Superior de Puerto Rico en contra de todas las demás personas afectadas por dicha sentencia.

> 2. En lugar de dicha demanda se podrá admitir una solicitud *ex parte* cuando comparecen en la misma todas las personas afectadas por la sentencia cuyo reconocimiento y ejecución se pretenda. Dicha solicitud deberá ser suscrita bajo juramento por todos y cada uno de los comparecientes.

---

[35] Ef. Litográficos v. Nat. Paper & Type Co., supra, págs. 395-396.

[36] Mench Fleck v. Mangual González, supra, pág. 856. Véase, también, Toro Avilés v. P.R.T.C., supra.

3. El procedimiento se tramitará en la forma ordinaria provista por las Reglas de Procedimiento Civil de Puerto Rico.

4. La demanda o la solicitud *ex parte* que se presente deberá estar acompañada de una copia certificada de la sentencia cuya convalidación se solicita y de una traducción fiel y exacta de la misma al idioma español en caso de que no haya sido originalmente redactada en este idioma o en el idioma inglés. La copia certificada de la sentencia debe ser legible, estar completa y deberá cumplir con los requisitos pertinentes establecidos en...las Reglas de Evidencia de Puerto Rico....

5. En todo caso en que, a los fines de lograr su posterior inscripción en el Registro de la Propiedad, se solicite la convalidación de las sentencias a las cuales se refiere el Art. 45 de la Ley Hipotecaria y del Registro de la Propiedad [(30 L.P.R.A. sec. 2208)]... deberá notificarse al Ministerio Fiscal.

6. En todo caso en que puedan ser afectados los intereses de menores o incapacitados, deberá incluirse en la demanda o en la solicitud *ex parte* que se presente a los padres y/o al tutor del menor o incapacitado, y se notificará de la misma al Procurador o Procuradora Especial de Relaciones de Familia para que dicho funcionario pueda defender los intereses del menor o incapacitado.

7. Cuando, a juicio del tribunal, se trate de un asunto de orden o interés público, se notificará con copia de la demanda o de la solicitud *ex parte* al Secretario de Justicia de Puerto Rico a los fines de que éste pueda comparecer en el procedimiento en representación del Estado Libre Asociado.

8. Para la revisión de las resoluciones, sentencias u otras providencias del tribunal de instancia, se seguirán los procedimientos establecidos en las Reglas de Procedimiento Civil y en el Reglamento del Tribunal Supremo.

9. Una vez decretado el reconocimiento o convalidación de la sentencia extranjera, la fase de su ejecución se regirá por las disposiciones contenidas en nuestro ordenamiento

procesal vigente para la ejecución de nuestras sentencias.[37]

De otra parte, referente al ámbito de revisión con el cual cuenta un Tribunal local a la hora de efectuar la acción bajo análisis, ya habíamos aseverado palmariamente que

> ... no es permisible en Puerto Rico la revisión en sus méritos de las sentencias extranjeras. La comisión por el tribunal extranjero de errores de hecho o de derecho no tiene pertinencia al asunto de la ejecutabilidad de la sentencia en este foro. Las sentencias extranjeras podrán examinarse en su fondo como medio tan solo para precisar la existencia de factores limitativos del *exequátur*. Le negamos pertinencia a la comisión de errores de hecho o de derecho por considerar que la regla contraria atenta contra el orden internacional y en realidad anula los objetivos centrales del juicio de *exequátur*.[38]

A esos efectos, el procedimiento de *exequátur* no dará cabida para que una de las partes re-litigue en sus méritos la controversia que fue adjudicada por el tribunal extranjero.[39] Más bien, "[s]e admitirá prueba tan solo sobre aquella parte de los méritos, si alguna, que sea necesaria para esclarecer la aplicación de las normas [antes] sentadas respecto a la procedencia o no del *exequátur*".[40] Primordialmente, el tribunal deberá enfocarse en "resolver los planteamientos de índole

---

[37] Márquez Estrella, ex parte, supra, págs. 253-254.

[38] Ef. Litográficos v. Nat. Paper & Type Co., supra, pág. 401. Véanse, también: Mench Fleck v. Mangual González, supra, pág. 856; Márquez Estrella, ex parte, supra, pág. 255.

[39] Ef. Litográficos v. Nat. Paper & Type Co., supra, pág. 405.

[40] Íd.

procesal que sean pertinentes [y] a determinar que la sentencia extranjera [o estatal] cumplió con todas las normas del Derecho Internacional Privado" antes discutidas.[41]

Ahora bien, lo anterior debe examinarse a la luz de nuestras expresiones en <u>Márquez Estrella, ex parte</u>, supra. Allí distinguimos entre la *validez* de una sentencia y su *reconocimiento*. Según apuntalamos,

> "la validez constituye... un requisito para el reconocimiento. Pero el hecho de que una sentencia sea válida no conlleva necesariamente el reconocimiento de la misma, ya que ello implica la aceptación de las leyes del estado o país del foro de origen en cuanto a las personas y a la materia que quedará afectada por la ejecutoria. *Por lo tanto, esta aceptación estará limitada por consideraciones de orden público, orden constitucional, los intereses, principios y valores del estado o país del foro donde se promueve el reconocimiento.* No obstante, es necesario advertir que *en el caso de las sentencias dictadas en las jurisdicciones estatales de Estados Unidos, los tribunales [de Puerto Rico], al igual que los demás estados, territorios o posesiones federales, tendrán que darle entera fe y crédito a las mismas independientemente de lo que sean [sic] la política pública y las disposiciones legales de Puerto Rico sobre la materia o asunto de que se trate, siempre y cuando tales sentencias hayan sido dictadas por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma, mediante el debido proceso de ley y no hayan sido obtenidas por fraude".*[42]

Todo lo anterior implica que en una acción de *exequátur* el tribunal local no podrá entrar a considerar los méritos de la sentencia extranjera, a no ser que se

---

[41] <u>Márquez Estrella, ex parte</u>, supra, pág. 255.

[42] Íd., págs. 255-256.

encuentre en la necesidad de constatar que la jurisdicción foránea ha cumplido con las normas de Derecho Internacional Privado hasta aquí contempladas. Sin embargo, lo anterior no conlleva el reconocimiento automático de una sentencia extranjera válida. Por el contrario, *una sentencia extranjera* no será reconocida cuando esta afecta adversamente determinadas consideraciones de orden público, orden constitucional, o los intereses, principios y valores del estado o país del foro donde se promueve el reconocimiento.

Además, *si la sentencia proviene de un estado, territorio o posesión de la Unión Americana*, entonces el tribunal local estará impedido de cuestionar sustantivamente la misma, a pesar de que esta sea contraria a la política pública y a las disposiciones legales de Puerto Rico sobre la materia o asunto de que se trate, siempre y cuando aquel tribunal haya tenido jurisdicción sobre la persona y la materia que sea objeto de la sentencia, haya velado por el fiel cumplimiento del debido proceso de ley y la sentencia no haya sido obtenida por fraude. Sólo así se respeta la cláusula constitucional federal de entera fe y crédito.

Por último, amerita resaltar que hoy nuestras Reglas de Procedimiento Civil han recogido los preceptos jurisprudenciales discutidos. Mediante la reformulación del cuerpo procesal en el 2009, las Reglas 55 a 55.6 de Procedimiento Civil fueron adoptadas para incorporar

normativamente, y por primera vez, aquellos aspectos procesales relacionados a la figura del *exequátur*.[43]

Así, la Regla 55.1 de Procedimiento Civil dispone que el término *exequátur* se ha de definir como un "procedimiento de convalidación y reconocimiento judicial de una sentencia de otra jurisdicción por los tribunales del foro donde se pretende hacer efectiva".[44] Por su parte, la Regla 55.2 reconoce los dos métodos disponibles para instar una acción de *exequátur*, a saber: (1) la presentación ante el tribunal correspondiente de una demanda contenciosa en contra de las otras partes afectadas por la sentencia extranjera; o (2) una solicitud *ex parte* suscrita bajo juramento por las mismas personas que deben ser involucradas en un pleito contencioso.[45]

Por otro lado, la Regla 55.3 requiere que la copia certificada de la sentencia extranjera sea legible, completa y que cumpla con las Reglas de Evidencia.[46] Además, exige que la misma esté adecuadamente traducida al español de no haber sido redactada originalmente en el idioma inglés o español.[47] Igualmente, la Regla 55.4 requiere la notificación oportuna del procedimiento a las personas afectadas por la sentencia que se pretende

---

[43] 32 L.P.R.A. Ap. V, R. 55.1-55.6.

[44] 32 L.P.R.A. Ap. V, R. 55.1.

[45] 32 L.P.R.A. Ap. V, R. 55.2.

[46] 32 L.P.R.A. Ap. V, R. 55.3 (a).

[47] 32 L.P.R.A. Ap. V, R. 55.3 (b).

convalidar y reconocer, al igual que a los funcionarios públicos a quienes se les debía notificar, según lo pautado en Márquez Estrella, ex parte, supra.[48]

A su vez, la Regla 55.5 adopta la distinción en procedimientos cuando se pretende convalidar y reconocer una sentencia de una jurisdicción extranjera *vis a vis* una proveniente de algún estado de la Unión Americana.[49] Por

---

[48] 32 L.P.R.A. Ap. V, R. 55.4.

[49] Concretamente, la Regla 55.5 provee lo siguiente:
>  El procedimiento se tramitará en la forma dispuesta en estas reglas.
>
>  El tribunal, luego de resolver los planteamientos de índole procesal que sean pertinentes, determinará si la sentencia de otra jurisdicción cumple con las normas siguientes:
>
> (a) Si se trata de una sentencia de un estado de Estados Unidos de América o sus territorios:
>
>  (1) Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;
>
>  (2) que el tribunal que la emitió haya observado el debido proceso de ley, y
>
>  (3) que no haya sido obtenida mediante fraude.
>
> (b) Si se trata de una sentencia dictada en otra jurisdicción que no sea un estado de Estados Unidos o sus territorios:
>
>  (1) Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;
>
>  (2) que se haya dictado por un tribunal competente;
>
>  (3) que el tribunal que la emitió haya observado los principios básicos del debido proceso de ley;
>
>  (4) que el sistema bajo el cual fue dictada se distinga por su imparcialidad y por la ausencia de prejuicio contra las personas extranjeras;
>
>  (5) que no sea contraria al orden público;
>
>  (6) que no sea contraria a los principios básicos de justicia, y

último, nuestra Regla 55.6 de Procedimiento Civil exige que "la ejecución de la sentencia de otra jurisdicción reconocida y convalidada se tramit[e] en conformidad con las disposiciones del ordenamiento procesal vigente para la ejecución de las sentencias dictadas por los tribunales de Puerto Rico".[50]

Examinadas las normas legales aplicables a la figura del *exequátur*, pasemos a esbozar el procedimiento requerido para la enmienda y alteración de un certificado de nacimiento.

*B. Las enmiendas a los certificados de nacimiento*

El Art. 31 de la Ley Núm. 24 de 22 de abril de 1931 (24 L.P.R.A. sec. 1041, *et seq.*), según enmendada, conocida como Ley del Registro Demográfico de Puerto Rico, detalla el procedimiento a seguir cuando se interesa corregir o añadir cualquier dato a los certificados custodiados por el Secretario de Salud.[51] El referido precepto establece que:

> las omisiones o incorrecciones que aparezcan en cualquier certificado *antes de ser registrado en el Departamento de Salud* podrán ser salvadas insertando las correcciones o adiciones necesarias en tinta roja en dicho certificado, *pero luego de haber sido archivado en el Departamento de Salud*, no podrá hacerse en los mismos rectificación, adición ni enmienda alguna que altere sustancialmente el mismo, *sino en virtud de orden del Tribunal de [Primera Instancia]*, cuya orden, en tal caso, será

---

(7) que no se haya obtenido mediante fraude. 32 L.P.R.A. Ap. V, R. 55.5.

[50] 32 L.P.R.A. Ap. V, R. 55.6.

[51] Véase, 24 L.P.R.A. sec. 1231.

archivada en el Departamento de Salud haciendo referencia al certificado que corresponda....[52]

Como bien se deduce del citado texto, existen dos etapas en las cuales puede enmendarse un certificado de nacimiento, a saber: (1) previo al registro del certificado, y (2) posterior a su archivo en el Departamento de Salud. En el primero de los casos, el Secretario del Departamento de Salud (Secretario) posee la facultad para corregir o añadir información sin la intervención de los tribunales. Empero, la segunda eventualidad sí requiere que los tribunales intervengan y autoricen cualquier actuación del Secretario o su personal.

Ante la enmienda de un certificado posterior a su archivo en el Departamento de Salud, el Art. 31 de la Ley Núm. 24, *supra*, provee el procedimiento judicial aplicable de la manera siguiente:

> Para obtener dicha orden deberá presentar el interesado una solicitud a la Sala del Tribunal de [Primera Instancia] de su domicilio, exponiendo bajo juramento su pretensión y formulándola debidamente acompañada de la prueba documental pertinente en apoyo de su solicitud. Copia de la solicitud y de toda la prueba documental le será remitida al Ministerio Fiscal simultáneamente con su radicación quien deberá formular su posición dentro del término de 10 días.
>
> Transcurridos 10 días desde la remisión y notificación al Ministerio Fiscal sin que éste haya formulado objeción alguna, el tribunal entenderá y resolverá los méritos de la petición sin necesidad de celebrar vista, o discrecionalmente podrá celebrar vista de

---

[52] (Énfasis nuestro) Íd.

estimarlo procedente y dictará el auto que procede.

..... La rectificación, adición o enmienda de un certificado ya archivado en el Registro General Demográfico se hará insertando en él las correcciones, adiciones o enmiendas *autorizadas por el tribunal.* Las tachaduras que fueren necesarias se harán de modo que siempre se pueda leer la palabra tachada.[53]

En vista de lo anterior, resulta forzoso concluir que, si la enmienda solicitada al certificado de nacimiento encuentra su justificación o procedencia en una sentencia extranjera o en el dictamen de algún estado de la Unión Americana, será imprescindible que este haya sido validado y reconocido previamente vía un procedimiento de *exequátur.* Sólo así armonizamos las doctrinas legales que imperan en nuestra jurisdicción.

Examinado el marco conceptual y jurídico aplicable a la controversia presentada, pasemos a su adecuada disposición.

### III

En el caso de autos, la peticionaria le imputa al Tribunal *a quo* haber errado al no ordenar al Registro Demográfico a que restableciera el certificado de nacimiento de la menor T.R. a su estado original mediante la reinscripción del señor Correa Rodríguez como el padre de la menor. Ello, a pesar del foro apelativo intermedio haber determinado que el Registro no podía acoger y ejecutar automáticamente la sentencia emitida por el tribunal estatal de Nueva York, la cual resolvió que el

---

[53] (Énfasis nuestro.) Íd.

señor Correa Rodríguez no era el padre biológico de la niña T.R.

Además, la señora Rodríguez Contreras arguye que el Tribunal de Apelaciones no tenía autoridad para ordenarle al Tribunal de Primera Instancia que celebrara un procedimiento de *exequátur*, cuando ninguna de las partes ha solicitado tal remedio. Luego de examinar el expediente judicial en su integridad, es forzoso concluir que el foro judicial apelado incidió en el error imputado. Veamos.

Como bien indicamos en nuestra exposición del derecho, cuando una parte pretende enmendar el contenido de un certificado de nacimiento para rectificar alguna incorrección u omisión, esta deberá adherirse al procedimiento dispuesto en el Art. 31 de la Ley Núm. 24, *supra*. Cónsono con el estatuto mencionado, existen dos instancias en las cuales podrá alterarse el contenido de un certificado, a saber: (1) previo a su archivo o (2) posterior a su registro.

Si la enmienda solicitada pretende alterar un certificado *ya archivado en el Departamento de Salud*, será imperativo que, antes de efectuarse la enmienda solicitada, los tribunales intervengan y autoricen la modificación pedida. A esos efectos, bajo ninguna circunstancia podrá el Secretario ordenar que un certificado *ya archivado* sea enmendado sin la autorización de nuestros tribunales.

Para dar inicio a la referida intervención judicial, será imprescindible que la parte interesada presente una solicitud ante el Tribunal de Primera Instancia, debidamente juramentada, fundamentada y acompañada de toda la prueba pertinente y admisible. Coetáneo a la referida presentación, la parte interesada deberá remitir una copia de la solicitud y de toda su prueba documental al Ministerio Fiscal, quien tendrá 10 días para formular su posición respecto al petitorio instado. Una vez el Ministerio Público manifieste su posición, o pasados diez días sin que esta se haya formulado, el Tribunal de Primera Instancia deberá resolver la solicitud en sus méritos y dictar el auto que proceda, sin necesidad de celebrar vista, o celebrándola discrecionalmente de estimarlo procedente.

Ahora bien, cuando la solicitud de enmienda al certificado registrado se fundamenta en una sentencia extranjera o de algún estado de los Estados Unidos, el Tribunal de Primera Instancia no podrá considerar dicha solicitud en sus méritos, a no ser que la sentencia extranjera o norteamericana haya sido convalidada y reconocida anteriormente mediante un procedimiento de *exequátur* celebrado en nuestros tribunales locales. Para ello, el procedimiento de *exequátur* podrá celebrarse como una acción que antecede la consideración de la solicitud de enmienda al certificado archivado en el Departamento de

Salud, o como un procedimiento coetáneo a la solución de dicha petición.

Independientemente del método seleccionado, resulta imperativo que la enmienda solicitada no sea aprobada sin antes validarse y reconocerse la sentencia extranjera o estadounidense que la fundamenta. Ello pues, "en Puerto Rico, al igual que en las demás jurisdicciones foráneas, las sentencias extranjeras, incluso las provenientes de las jurisdicciones estatales norteamericanas, no operan en forma directa o *ex propio vigore*, sino que requieren el reconocimiento de los tribunales locales antes de que puedan ser ejecutadas o en alguna otra forma hacerse efectivas en [nuestra jurisdicción]".[54]   Enmendar un certificado registrado en el Departamento de Salud sin haber efectuado un procedimiento de *exequátur*, trastoca principios básicos del Derecho Internacional Privado y las garantías constitucionales a un debido proceso de ley, entre otros intereses públicos.

En el caso ante nos, el Registro alteró el certificado de nacimiento, previamente archivado, de la menor T.R. sin existir una solicitud judicial a esos efectos y sin contar con la intervención judicial requerida por el Art. 38 de la Ley Núm. 24, *supra*. Fundamentó su proceder en una sentencia emitida por la Corte de Familia del Estado de Nueva York, la cual, basada en pruebas científicas y genéticas, resolvió que el señor

---

[54] *Márquez Estrella, ex parte*, supra, pág. 255.

Correa Rodríguez no era el padre biológico de la menor T.R. y, consecuentemente, ordenó al Registro a que enmendara el certificado de nacimiento de la menor a la luz de esa realidad filiatoria. Tal proceder a todas luces, constituye un acto *ultra vires* que trasciende la autoridad legal conferida a esa agencia.

Cabe apuntalar que, aunque esa sentencia por virtud de la Constitución federal merece nuestra entera fe y crédito, la misma no opera *ex proprio vigore* en nuestra jurisdicción. En virtud de nuestro ordenamiento jurídico, y apoyándonos en principios de debido proceso de ley, aquella parte interesada en que una sentencia emitida por un estado norteamericano cobre efectos en nuestra jurisdicción, está obligada a iniciar un procedimiento de *exequátur* mediante la presentación de una demanda en contra de todas las partes afectadas por el dictamen extranjero, o instando una solicitud *ex parte* en la cual comparezcan todas las partes que podrían verse afectadas por la sentencia cuyo reconocimiento y ejecución se pretende.

Toda vez que la sentencia del estado de Nueva York no fue validada y reconocida por un tribunal local, el Registro no podía ejecutarla automáticamente, tachando así del certificado de nacimiento de la menor T.R. el nombre del señor Correa Rodríguez bajo el encasillado destinado a identificar al padre de la niña. Mucho menos cuando ninguna de las partes ha presentado una solicitud al

Tribunal de Primera Instancia peticionando la enmienda efectuada.

Apoyándonos en todo lo anterior y considerando que no existen hechos en controversias que impidan que se dicte sentencia sumaria, *resolvemos que el Registro debe restablecer el nombre del señor Correa Rodríguez como el padre de la menor T.R.* Ello pues, el Registro actuó ilegalmente al tachar su nombre sin gozar de una *solicitud de enmienda al certificado de nacimiento* debidamente adjudicada por el Tribunal de Primera Instancia y por ejecutar automáticamente una sentencia del Estado de Nueva York que nunca fue validada y reconocida por un tribunal local.

Finalmente, procede examinar si el Tribunal de Apelaciones podía ordenar, *motu proprio*, un procedimiento de *exequátur* para validar y reconocer la sentencia bajo examen. Como bien dispone el profesor José A. Cuevas Segarra, nuestro derecho es uno de naturaleza rogada.[55] Ante tal realidad, correspondía a las partes presentar una demanda o petición *ex parte* de *exequátur* que iniciara el procedimiento de convalidación y reconocimiento de la sentencia de la Corte de Familia de Nueva York. Al examinar el legajo, no encontramos petitorio alguno destinado a originar una acción de exequátur.

En el caso particular de la madre de la menor, esta sólo se limitó a solicitar que se revirtiese el contenido

---

[55] J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Pub. JTS, T. IV, 2011, pág. 1256.

del certificado de nacimiento de la niña T.R. a aquel que existía antes de la acción *ultra vires* del Registro, entiéndase, que se reinscriba al señor Correa Rodríguez como el padre de la menor.[56]  Referente al Gobierno de Puerto Rico, en su alegato este reconoce que el Registro Demográfico carecía de facultad para ejecutar de manera automática la orden de un tribunal del estado de Nueva York. Al así razonar, expone que la acción del Registro Demográfico constituyó un error administrativo, el cual debe ser rectificado, ya que no le corresponde al Estado reclamar ni hacer efectiva esa orden por ser un asunto que le compete a los padres de la menor, específicamente al señor Correa Rodríguez. En ese contexto, la Procuradora General nos expresa lo siguiente:

> **Así pues, a la luz de la doctrina pautada por este Honorable Tribunal Supremo en cuanto al curso de acción adecuado ante la comisión de errores administrativos, y por consideraciones de política pública, hoy reconocemos que procede la rectificación del error cometido por el Registro Demográfico y estamos en la mejor disposición de restablecer las constancias originales del mismo, con brevedad, de sernos ello ordenado por este Alto Foro.** (Énfasis nuestro)

Por último, el señor Correa Rodríguez, parte realmente interesada en que se rectifique el estado filiatorio de la menor, se ha cruzado de brazos a lo largo

---

[56] Aunque la madre de la menor alegó que el Registro no podía enmendar el certificado de nacimiento de la niña según el contenido de una sentencia del estado de Nueva York que no había sido validada y reconocida, este argumento fue planteado como fundamento de su causa de acción principal, a saber: la naturaleza *ultra vires* de la efectividad automática de la sentencia estadounidense concedida por el Registro cuando enmendó el certificado de nacimiento.  Interpretar que la peticionaria ha solicitado que se celebre un procedimiento de *exequátur* constituye añadir una segunda causa de acción a la demanda de la señora Rodríguez Contreras la cual nunca fue instada por ésta.

de este proceso. Según se deduce de todo lo anterior, en ningún momento alguna de las partes ha solicitado que se inicie una acción de *exequátur*.

En ese contexto, es improcedente que los Tribunales actuemos como abogados de alguna de las partes, ordenando, *motu proprio*, procedimientos judiciales que nunca fueron solicitados. Si alguna de las partes en el presente caso le interesa que se ejecute en nuestra jurisdicción la sentencia del estado de Nueva York, es a esa parte y no al Tribunal de Apelaciones, a quien le corresponde instar una acción de *exequátur* de acuerdo a los preceptos legales discutidos en esta sentencia. En consecuencia, resolvemos que el foro apelativo intermedio erró al ordenar al Tribunal de Primera Instancia que celebrara de inmediato un procedimiento de *exequátur* para validar y reconocer la sentencia dictada por la Corte de Nueva York.

IV

Por los fundamentos que anteceden, modificamos en parte la sentencia del Tribunal de Apelaciones. Como resultado, le ordenamos al Registro Demográfico de Puerto Rico a que reinscriba en el certificado de nacimiento de la niña T.R. al Sr. Carlos Javier Correa Rodríguez como padre de la menor y revocamos la orden emitida por el foro apelativo intermedio que dictaminaba la celebración de un procedimiento *exequátur* de inmediato. Así modificada, confirmamos el dictamen del Tribunal *a quo*.

Se dicta sentencia de conformidad.


                         EDGARDO RIVERA GARCIA
                          JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Annette G. Rodríguez Contreras en representación de su hija (T.R.) Peticionaria | Certiorari |
| v. | CC-2009-0413 |
| Estado Libre Asociado de Puerto Rico; El Registro Demográfico de Puerto Rico Recurrida | |

SENTENCIA

En San Juan, Puerto Rico, a 30 de noviembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, modificamos en parte la sentencia del Tribunal de Apelaciones. Como resultado, le ordenamos al Registro Demográfico de Puerto Rico a que reinscriba en el certificado de nacimiento de la niña T.R. al Sr. Carlos Javier Correa Rodríguez como padre de la menor y revocamos la orden emitida por el foro apelativo intermedio que dictaminaba la celebración de un procedimiento *exequátur* de inmediato. Así modificada, confirmamos el dictamen del Tribunal *a quo*.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo